ALARIC STONE *vs.* HELEN S. SARGENT & others.

Suffolk.   January 12, 1915. — March 2, 1915.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & CROSBY, JJ.

*Bills and Notes,* Alteration, Holder in due course, Incomplete instrument.   *Fraud.* *Agency.*   *Equity Jurisdiction,* To relieve from the results of fraud.   *Insurance,* Life: assignment of policy.   *Assignment.*   *Estoppel.*

If the general agent of an insurance company which is the payee in a note of one of its policy holders, given to secure a loan by it, without the knowledge of the maker fraudulently alters the note by raising its amount and erasing the name of the payee and delivers it with the place for the name of the payee blank to one who pays value for it, such purchaser because of the incomplete state of the instrument is put upon notice of the lack of authority of the agent for his acts and has not the right of recovery upon the note according to its original tenor given to a holder in due course by R. L. c. 73, § 141; and the maker is entitled to have the note delivered to him for cancellation.

If the holder of a policy of life insurance, as security for the payment of notes made by him payable to the insurance company, delivers to a general agent for the company his policy and an assignment of his rights therein, leaving blank the place for the name of the assignee and writing at the bottom of the assignment the words, "In case of death all balance over notes to be paid to my estate," and the agent agrees with him that the notes and the policy shall remain with the company and shall not be negotiated by it; and if the agent fraudulently alters the notes by raising their amounts and, as to one, erasing the name of the payee, and delivers the note with the name of the payee blank and the assignment with the name of the assignee blank and the policy

to a person who pays value therefor, such person is put upon inquiry as to the authority of the agent, and the policy holder by a suit in equity can compel a redelivery of the note for cancellation, and a redelivery of the policy and of the assignment without being obliged first to pay any part of what was paid to the agent by the person who received them from the agent.

BILL IN EQUITY, filed in the Superior Court on November 13, 1913, and afterwards amended, against Helen S. Sargent, the Connecticut Mutual Life Insurance Company, and Emery B. Gibbs and Atherton N. Hunt, executors of the will of George E. Williams, alleging in substance that the plaintiff in April, 1909, delivered to Williams as general agent of the defendant company two notes, each for $250, payable to the order of the defendant company in one year from their date, and, to secure their payment, an assignment of the plaintiff's life insurance policy, Williams agreeing with him that the company would retain and would not negotiate the notes or the policy; that Williams altered the notes by raising their amounts to $1,250 each and by erasing the name of the payee and delivered one of them to the defendant Sargent, the other remaining in his hands at the time of his death. The plaintiff prayed for an injunction against any action being brought upon the notes, that the notes be declared void and delivered to him and that the policy be delivered to the plaintiff upon the payment by him of such sum as the court might determine to be due from him.

It appeared from the record that a cross bill was filed by the executors of the will of Williams.

The bill and cross bill were heard by *Pierce*, J., a commissioner having been appointed under Equity Rule 35 to take the testimony. The judge filed a memorandum of findings of fact and rulings of law which included the following:

The plaintiff was a master in the Boston Latin School, having "the strength and the weakness of a modern up-to-date, first-class school teacher; that is to say, he looked to be honest, rugged, vigorous, without stain or defect. His testimony showed him to be free of worldly experience, gullible and ill adapted to fence with the adroit, unscrupulous, well armored and well armed agent of a large insurance company."

On March 17, 1909, he wrote the Connecticut Mutual Life Insurance Company at their office in Boston to the effect that

he desired a loan. In response thereto Williams, the general agent for the Insurance Company, called upon him at his room in the Boston Latin School building. Williams stated that he had called in response to the letter sent to the company by Stone. Stone replied that he desired to borrow $500, to which Williams answered that the company did not like to make loans on their policies for the reason that the borrowers were slow in repayment, and asked if he would be willing to have someone else loan the money, stating that he could arrange it. Stone replied that he was not willing to obtain it elsewhere; that he did not wish to have his policy in the hands of any one other than the company; that he could get it easily from friends, but desired to get it from the company because it would be easier for his wife to take care of in the event of his death. In other words, he refused absolutely to borrow from any one other than the Connecticut Mutual Life Insurance Company.

Williams then said that if he insisted upon it the company was bound to make the loan and it was arranged that Stone should bring to the Latin School his policy.

Within a few days Williams again came to Stone's room. Stone had the policy. Williams stated that it was advisable to have two notes of $250 rather than one of $500, because they were easier to renew than the single note. Thereupon Stone started to fill out two blank forms of notes presented to him by Williams for that purpose. After a moment of time, during which there was conversation relating to the filling out of the notes, Williams, while sitting at Stone's desk, in his immediate presence, with the assent of Stone, took the blanks and proceeded to fill in the blank places. When completed the two notes were handed to Stone, who read them and signed them. The notes were complete in all respects.

At the same time Stone signed an assignment of his policy without reading it and with its blanks unfilled. The assignment was absolute in form save that at the very end the words "In case of death all balance over notes to be paid to my estate" appeared, thus disclosing that the assignment was given as security for the payment of notes and excluding the theory of a sale of Stone's interest.

The notes and assignment were delivered to Williams for

delivery to the company, and a check for $475.95 was received by Stone through the mail about May 1, 1909.

Interest and premiums were paid by Stone by checks sent to the Boston office of the Connecticut Mutual Life Insurance Company as they severally became due, and receipts were duly sent therefor by Williams to Stone. Williams duly notified the company of the receipts of premiums, but never of the receipts of interest, and the company never directly or inferentially had any knowledge, or information leading by inference to knowledge, that any money had been lent to Stone by it through Williams, or otherwise, or that any interest had been paid by Stone to it through Williams, or had been received by any one on such an account.

Of the two notes entrusted to Williams in April, 1909, for delivery to the payee, the Connecticut Mutual Life Insurance Company, Williams retained one in his own possession, and sold the other almost immediately after its receipt to Harry R. Stanley, Esquire, who in turn sold it to his sister, the defendant Helen Sargent. Stanley was her agent and had charge of her property as trustee.

Both notes had been fraudulently altered by Williams in substantial and material ways. In the process of alteration he caused the date, the amount $250 in figures, the amount in writing, the name of the payee, and the rate of interest to be erased or obliterated in some manner and by some means not fully disclosed, and in place thereof made new and different figures thereon, inserted a new and changed time of payment and of amount to be paid, $1,250, and also, in the one he retained, a new and unauthorized name as payee, himself, and in the other he left blank the place designed for the insertion of the name of the payee.

The note above described as retained in the possession of Williams was still in his possession at the time of his death, July 28, 1913.

"It is clear that in his lifetime Williams could not have sued Stone successfully to collect the note in its original or altered form. It is equally clear that there never existed as between Williams and Stone any contract, express or implied, relying upon which Williams at law or in equity could compel Stone to pay him any

sum whatsoever. Stone told Williams in the most unmistakable way that he refused to become a borrower from any person or corporation other than the Connecticut Mutual Life Insurance Company, and with such an assertion no room is left at law or in equity for the growth of any implied obligation."

As regards the other note, when it was delivered or sold by Williams, even assuming that it was complete in other respects, it was incomplete as to the name of the payee; and the rights of Helen Sargent depend upon the real authority which Stone had in fact given in the matter. As Stone had given no authority, Sargent got none and was put upon inquiry of Stone to ascertain his rights and Stone's obligation.

No money or money's worth passed from Sargent, or those under whom she directly claimed, to Stone, and she therefore had no rights at law or in equity to call upon him for the discharge of any express or implied obligation.

In lending the money to Stone, Williams did not have any authority express or implied to act for the Connecticut Mutual Life Insurance Company. It was not a part of his duty so to do and was not an incident naturally attached to his position as general manager of an insurance office. Being outside of the ordinary duties appertaining to such a position, all persons dealing with him in relation to such a subject matter were bound at their peril to ascertain the limits of his authority.

A final decree was entered dismissing the cross bill, ordering that both of the notes be delivered to the plaintiff for cancellation and that the policy and the assignment be returned to him. The defendant Sargent appealed.

*J. M. Hallowell,* for the defendant Sargent.

*H. T. Richardson,* for the plaintiff.

BRALEY, J. The plaintiff's promissory note having been materially altered without his knowledge or assent by Williams, who among other changes erased the name of the payee leaving the space in blank, and raised the amount of the principal five fold, it is unenforceable according to its original tenor unless the defendant Sargent to whom after alteration it was transferred is a holder in due course. R. L. c. 73, § 141. But as the presiding judge has found that when delivered to her agents it was an incomplete instrument he is entitled to a return and cancellation

of the note. R. L. c. 73, § 31. *Andrews* v. *Sibley, ante,* 10. *Tower* v. *Stanley, ante,* 429.

The plaintiff when he gave the note also executed an assignment, with the blank for the name of the assignee unfilled, of his policy of life insurance as collateral security, which was delivered by Williams to the defendant with the note in question. It is contended, that the plaintiff is estopped from recovering the policy unless he first pays the entire amount for which the defendant took it as security. But the assignment was not an unqualified transfer. The words "in case of death all balance over notes to be paid to my estate" appearing on the face are sufficient with the other evidence to warrant the judge's finding, that it was pledged for the payment of the note in its original form held by the defendant, as well as for another note of the plaintiff's retained by Williams, but declared void by the decree because fraudulently altered, from which the defendants, his executors, have not appealed. The policy is not a negotiable instrument, and if the assignment is considered apart from the notes the words quoted clearly indicate that Williams was not clothed with the absolute title, and the defendant was put upon inquiry as to the source and extent of his ownership. *Tuttle* v. *First National Bank of Greenfield,* 187 Mass. 533. *Allen* v. *Puritan Trust Co.* 211 Mass. 409, 420. 2 Pom. Eq. Jur. §§ 710, 711. It never was an independent right to property capable of being transferred separately from the notes, so that one person could hold the principal obligation, and another person would hold the policy. *Whitaker* v. *Sumner,* 20 Pick. 399. *White* v. *Dodge,* 187 Mass. 449.

The note having been uncollectible for the reasons stated, the lien on the policy has been discharged. *Jarvis* v. *Rogers,* 15 Mass. 389. *Leighton* v. *Bowen,* 75 Maine, 504, 508. *Green* v. *Sinker, Davis & Co.* 135 Ind. 434. Nor under the doctrine of *Joslyn* v. *Wyman,* 5 Allen, 62, as a condition to relief should the plaintiff in equity be required to pay the amount he received. As a borrower of money he is expressly found not to have made any contract express or implied with either Williams or the defendant. *Foote* v. *Cotting,* 195 Mass. 55, 61.

The policy as well as the note must be returned to the plaintiff, and the decree is affirmed with costs.

*Ordered accordingly.*