## CACHE VALLEY COMMISSION CO. v. GENTER SALES CO. et al.

No. 4098.   Decided July 5, 1924.   (228 Pac. 203.)

1. BILLS AND NOTES—PLAINTIFF RECEIVING NOTE BEFORE COMPLE-
   TION BOUND TO KNOW THAT IT IS COMPLETED ACCORDING TO
   MAKER'S INTENTION.   Under Comp. Laws 1917, § 4043, plaintiff,
   with knowledge thereof, having accepted note in incomplete
   condition, was bound to know that it was completed in accord-
   ance with maker's intention before being clothed with right to
   enforce payment.

2. APPEAL AND ERROR—JUDGMENT NOT AFFIRMED AS TO SINGLE DE-
   FENDANT ON THEORY OF ESTOPPEL, IN VIEW OF INSTRUCTIONS AND
   EVIDENCE PERMITTING VERDICT AGAINST HIM ALONE.   In action on
   note where general verdict was against defendants jointly, held,
   that judgment would not be reversed as to two defendants only
   and affirmed as to the third on theory of estoppel in view of
   instructions and evidence permitting verdict against such de-
   fendant alone on theory of estoppel.
   See 4 C. J. § 3218; 8 C. J. § 313.

Appeal from District Court, Second District, Cache
County; *M. H. Harris,* Judge.

Action by the Cache Valley Commission Company against
the Genter Sales Company and others.   Judgment for plain-
tiff, and defendants H. Morrison, Alfred Jensen, and M. H.
Preece appeal.

REVERSED and REMANDED, with directions to grant new
trial.

*Jesse P. Rich,* of Logan, and *R. E. Lewis* and *T. D. Lewis,*
both of Salt Lake City, for appellants.

*A. E. Bowen,* of Salt Lake City, and *E. T. Young,* of
Logan, for respondent.

GIDEON, J.

On August 8, 1922, this action was instituted by plaintiff against the Genter Sales Company, a corporation, P. H. Genter, and three other defendants, H. Morrison, Alfred Jensen, and M. H. Preece. The sales company and Genter were not served with process and did not appear in the action. The other three defendants, appellants here, appeared and answered. Plaintiff had judgment, and the last three named defendants appeal. In the course of this opinion the words "defendants" will include and refer only to the three defendants appearing in the action.

In 1918 the Genter Sales Company sold to plaintiff two promissory notes. By indorsement the sales company guaranteed payment. The note in controversy in this action was given to plaintiff as security for the two notes sold to plaintiff by the sales company. Those notes were indorsed to the plaintiff company on February 10 and April 20, respectively, in 1918. The note, the basis of this action, was delivered to plaintiff on or about the month of July, 1921. The two notes transferred to plaintiff were then long past due.

The assignment of errors presents the question discussed in this opinion.

The facts and circumstances surrounding the execution of the note in question are substantially as follows: The Genter Sales Company had its place of business at Logan, Utah. Defendants were interested as stockholders, and one at least as a director, of that company. On or about June 1, 1921, Paul Genter, president, made certain representations to defendants that the company needed money for carrying on its business. It does not definitely appear what particular articles were to be purchased with this money, but it does appear without question that it was needed for and intended to be used in procuring additional supplies with which to carry on the business. Representations were made by Genter that the sum of $6,000 could be obtained on notes signed by defendants from a Mr. Hemingway whose residence was at Salt Lake City or Bingham near Salt Lake City. Defendants, jointly with the Genter Sales Company, executed three notes of $2,000 each maturing at different dates. In each note the

space for the name of the payee was left blank. These notes were intrusted to Paul Genter to be used for the purpose stated. It was uncertain at that time whether the payee would be Mr. Hemingway or a bank in which he was interested.

These three notes bear date June 2, 1921. On or about June 8th following Mr. Genter returned to Logan accompanied by Mr. Hemingway. Hemingway apparently on that occasion visited that community in order to satisfy himself as to the financial responsibility of defendants. He and Mr. Genter, accompanied by a Mr. Gibson, called on the defendants at their respective homes. Gibson was at that time interested in plaintiff company, but did not go to the homes of defendants in the interest of any business connected with that company. It seems Mr. Hemingway desired his judgment on the value of defendants' lands. Mr. Hemingway was satisfied with the financial resources of defendants but did not care to accept the form of notes executed on June 2d. In the conversations had during the visit at the homes of defendants inquiry was made as to whether the defendants were willing to execute other notes. They agreed to do so with the understanding that the former notes should be returned to them. They were assured by Mr. Genter, and, as testified to by them, in the presence of both Hemingway and Gibson, that the notes were in the office of the sales company at Logan, Utah, and would be delivered to defendants that day or as soon as either of the defendants called at the office of the sales company. The notes to Mr. Hemingway were executed and delivered to him and are in no way involved in this litigation. One of the three notes executed on June 24 was afterwards returned to defendant Jensen. It was reported that the other two notes had been lost or destroyed.

In July, or some time in the latter part of the summer of 1921, the plaintiff company was demanding payment of the two notes indorsed to it in 1918. It had been unable to collect those notes from the makers. To secure payment the president of the sales company, Paul Genter, delivered to plaintiff the note involved in this action, being one of the

notes for $2,000 executed by defendants on June 2d payable seven months after date. No payee was named in the note at the time of its delivery to plaintiff. The testimony is that plaintiff was assured by Genter that he would take the matter up within a reasonable time, but that if he failed to do so the plaintiff company could insert its name as payee in the note. Just when plaintiff's name was inserted as payee is not definitely fixed. The testimony of Mr. Bowen, manager of plaintiff, is that it was some months after the note had been delivered to plaintiff. The testimony is without dispute that the defendants were, and each of them was, without knowledge that the note had been given to plaintiff for the purpose of securing past due indebtedness or for any other purpose until the month of December, 1921. The testimony of each of the defendants, and this testimony is not disputed, is that they did not know of any indebtedness to plaintiff from the sales company. The fact that no payee was named in the note at the time of its delivery to plaintiff affirmatively appears from plaintiff's own testimony. It likewise appears that the notes had not been used by the president of the sales company, Genter, for the purpose for which they were executed by defendants. There is no testimony that the defendants Morrison and Preece had by any act led plaintiff to assume that they recognized any obligation growing out of the note in question or made any agreement or promise to pay the note or the debt attempted to be secured by its delivery to plaintiff.

At the close of plaintiff's testimony counsel for defendants moved on behalf of each defendant for a nonsuit. The court denied this motion. It should have granted the motion as to the defendants Morrison and Preece.

Numerous authorities are cited and relied on by respondent in support of the court's ruling; but, in our judgment, our statute is a conclusive answer to any claim that the court should have submitted to the jury the question of the liability of the defendants Morrison and Preece. As indicated, there is no dispute that the notes were used for a purpose other than that for which they were executed by defendants. Neither is there any dispute that the payee was not named

in the note at the time of its delivery to plaintiff.  Comp. Laws Utah 1917, § 4043, being one of the sections of the Negotiable Instruments Act, is as follows:

"Where an instrument is wanting in any material particular, the person in possession thereof has a prima facie authority to ·complete it by filling up the blanks therein.  And a signature on a blank paper delivered by the person making the signature in order that the paper may be converted into a negotiable instrument operates as a prima facie authority to fill it up as such for any amount. In order, however, that any such instrument when completed may be enforced against any person who became a party thereto prior to its completion, it must be filled up strictly in accordance with the authority given and within a reasonable time.  But if any such instrument, after completion, is negotiated to a holder in due course it is valid and effectual for all purposes in his hands, and he may enforce it as if it had been filled up strictly in accordance with the authority given and within a reasonable time."

That the instrument here in question was incomplete when it left the hands of defendants, and when it was delivered to plaintiff is, as stated, admitted.  Defendants were parties prior to the completion of the note and before its delivery. The note therefore falls squarely within the wording of the statute that any one with knowledge in accepting the instrument in an incomplete condition is bound to know that it is completed in accordance with the intent and instruction of the maker before being clothed with the legal right to enforce payment against such maker.  Whatever control the president of the sales company, Genter, had over this note from June 2d, the date of its execution, to June 8th, his power ceased and terminated on June 8th, the date upon which the $6,000 note was executed and delivered to Mr. Hemingway. The defendants executed that note to Hemingway with the direct understanding and statement on their part that the other previously executed notes should be returned to them and it necessarily follows that Genter's control over this note, except to return it to the defendants, ceased.  The delivery to plaintiff thereafter of the note in question, being one of the three that were to be returned to the makers, was therefore not only in excess of any authority Genter may have had over it prior to June 8th, but was an act without

any authority. The witness Gibson, who accompanied
Mr. Hemingway and Mr. Genter on June 8th, testified in
this case and stated he was then an officer of the plaintiff
company and that he had been connected with that company
for about three years. It may be a serious question, there-
fore, whether the plaintiff is not charged with actual knowl-
edge of the fact that the president of the Genter Sales Com-
pany had no right to deliver this note to any one for any
purpose.

The Supreme Court of Nebraska has construed a section
of the statutes of that state which is identical with our sec-
tion 4043, supra, in a case in which the facts are strikingly
similar to the facts in the instant case. *Hartington Nat.
Bank* v. *Breslin et al.*, 88 Neb. 47, 128 N. W. 659, 31 L. R. A.
(N. S.) 130, Ann. Cas. 1912B, 1008. The headnote to that
case, which reflects the opinion of the court, reads:

"Defendant signed a promissory note which was perfect on its
face, with the exception of a blank for the name of the payee, and
intrusted it to his comaker who delivered it in that form to a bank
two days later, before it was due, in violation of an agreement that
it should be used by him in buying a meat market, that the name of
the seller should be inserted in the blank, and that the note should
be returned to defendant if not used for that purpose. The bank
accepted the note at its face value and afterward inserted its own
name in the blank as payee. *Held*, that the instrument is not en-
forceable against defendant within the meaning of that part of the
negotiable instruments law relating to the filling of blanks and con-
taining among other things the following provision: 'In order, how-
ever, that any such instrument when completed may be enforced
against any person who became a party thereto prior to its comple-
tion, it must be filled up strictly in accordance with the authority
given and within a reasonable time.'"

Whatever may have been the holdings of courts prior to
the enactment of the negotiable instruments law, as pointed
out in the Nebraska case, it is now generally held that the
section of the act quoted modifies or changes the rule of the
law merchant in material respects. See, also, *Vander Ploeg*
v. *Van Zuuk*, 135 Iowa, 350, 112 N. W. 807, 13 L. R. A. (N.
S.) 490, 124 Am. St. Rep. 275; *Tower* v. *Stanley*, 220 Mass.
429, 107 N. E. 1010; *Stone* v. *Sargent*, 220 Mass. 445, 107 N.
E. 1014.

There was some testimony tending to show a ratification by defendant Jensen of the unauthorized act of Genter in delivering the note to plaintiff. It is therefore strongly insisted by counsel for respondent that, if the judgment is reversed as to Morrison and Preece, nevertheless, there is testimony upon which the jury could have found, under the court's instructions, that the defendant Jensen ratified the act of Genter and is therefore now estopped to set up the unauthorized act of Genter as a defense or deny liability on his part. Without entering upon a discussion of the testimony bearing upon the acts which are claimed to be a ratification or to work an estoppel on the part of Jensen, it must suffice to say that in our judgment there is some substantial testimony, however slight and unconvincing it may be, which authorized the court to submit to the jury the question as to Jensen's ratification and whether his acts and statements were sufficient to create or work an estoppel on his part to deny liability. The verdict of the jury, in our opinion, is a conclusive answer to the contention of respondent's counsel that the jury may have rendered its verdict against Jensen upon the theory that he had ratified Genter's act. That verdict is not against Jensen alone. It is against all of the defendants jointly. If special interrogatories **2** had been submitted to the jury respecting the liability of defendant Jensen growing out of ratification on his part or acts which amounted to or worked an estoppel, then there would be some basis for counsel's contention that the judgment should be affirmed as against Jensen although reversed as to the others.

The court's fifth instruction to the jury is to the effect (a) that the burden was upon defendants to prove by a preponderance of the evidence that the note sued upon was delivered to plaintiff company contrary to defendants' instructions, or that the same was delivered by Genter in fraud of defendants; (b) that the burden was upon plaintiff to prove that the defendant Jensen is estopped from denying the delivery or ratified the delivery and promised to pay in consideration of extension of time of payment. This instruc-

tion, considered in connection with the court's next instruction, leaves no other conclusion possible or reasonable than that the jury did not base its verdict upon any act of ratification on the part of one or all of the defendants. We have hereinbefore pointed out that there is no evidence of any ratification on the part of defendants Morrison and Preece. On the contrary, their evidence is that they at no time, either by word or implication, intimated an intention on their part to pay the obligation to plaintiff. That there were some conversations and communications respecting the matter after defendants ascertained that plaintiff had the note is shown, but that is not sufficient to amount to a ratification or to an estoppel either in law or morals. In the sixth instruction the jury are told that if they should find from the evidence that the note sued upon was intrusted by defendants to Genter to be by him used for the purpose of borrowing money from one Hemingway for the use of the Genter Sales Company and for that purpose only, that Genter, in fraud of the defendants, and without their knowledge and consent, and contrary to the instructions of defendants, delivered the note to plaintiff, then their verdict must be in favor of defendants Morrison and Preece; and also, unless they should further find from the evidence that defendant Jensen is estopped by his acts in that he ratified the delivery, under the other instructions of the court, their verdict must be in favor of defendant Jensen. The eighth and ninth instructions relate to certain acts of defendant Jensen testified to by witnesses for plaintiff claimed to constitute ratification or estoppel on the part of this defendant.

The court advised the jury that if the defendant Jensen, after learning that the plaintiff had acquired possession of the note sued upon, asked for an extension of time and was granted such extension, he would be liable the same as if he had authorized the delivery of the note in the first instance. The court did not submit to the jury the question as to whether the defendants Morrison and Preece had by any act ratified the delivery of the note in question to plaintiff or

that by any promise or agreement on their part they were estopped to deny liability.

The questions of ratification and estoppel submitted to the jury were wholly confined to the acts and promises on the part of defendant Jensen. As stated, the jury's verdict is not against defendant Jensen alone. The record containing no evidence of any ratification on the part of defendants Morrison and Preece the jury could not have consistently found a verdict based upon the ratification by them or acts which constituted an estoppel on their part; but, on the contrary, must have based their conclusion upon the theory that the delivery of the note was not contrary to the instructions or the intent of the makers at the time the same was executed.

There is some testimony in the record, elicited by questions calling for conclusions of the witnesses, which may have tended to mislead the jury with reference to the questions of ratification and estoppel. Witnesses were permitted to testify that they accepted the notes in good faith and to the negative proposition that they did not know that the delivery of the note for the purpose for which it was delivered did not meet with the approval of defendants and was contrary to their instructions.

The judgment is reversed and cause remanded to the district court of Cache county with directions to grant a new trial. Appellants to recover costs.

WEBER, C. J., and THURMAN, CHERRY, and FRICK, JJ., concur.