Allen, J.
 

 The facts in this case are not greatly in dispute. They are as follows:
 

 On November 29, 1930, the defendant in error, Thomas A.. Jenkins, took judgment on a cognovit note which plaintiff in error, P. J. Burke, had signed as maker. Upon motion of Burke, the judgment so taken was suspended, and Burke was permitted to file his answer. The answer contained two defenses. The first defense denied the execution and delivery of the note to Jenkins. The second defense alleged that on April 18, 1930, Burke went to the office of C. P. Ballard, vice president and cashier of the Ohio State Bank at Washington C. H., Ohio, and told Ballard that he desired to make a loan of $1,500 from the bank, the proceeds of such loan to be deposited to his account in that bank, and on this same day Ballard agreed to make the loan to Burke; that Ballard was also the agent of Jenkins in making loans for him from his money deposited in such bank, and acted as agent for Jenkins in this instant case; that in the execution of this note, Ballard presented to Burke a blank note with the name of the payee blank; that Burke signed such note,, leaving the payee blank, understanding that Ballard was to fill in the name of the Ohio State Bank; • that notwithstanding such agreement, Ballard, without
 
 *88
 
 authority or knowledge of Burke, inserted Jenkins’ name as payee; that on April 18,1930, and at all times, Jenkins had notice that Ballard, his agent, had such understanding with Burke in regard to the insertion of the Ohio State Bank as payee; that Jenkins had notice that Ballard violated this agreement by inserting his name as payee, and that the bank was insolvent. Burke further alleged that when the bank was closed he had a deposit of $2,560, and that on May 12, 1930, 0. 0. Gray, superintendent of banks of the state of Ohio, took possession of the assets and property of the bank.
 

 Jenkins filed a reply, admitting that Ballard was an officer of the Ohio State Bank and that such bank was closed on May 12,1930. He also admitted that Burke signed the note with the payee blank, and that Ballard transferred Jenkins’ funds to Burke’s account, and filled in Jenkins ’ name as payee of the note. The reply then denied each and every other allegation.
 

 The case was submitted to the court on the pleadings and the evidence, a jury having been waived, and judgment was given for defendant in error in the sum of $1,757.20.
 

 The record presents the following undisputed facts:
 

 On April 18,1930, Burke went to the Ohio State Bank and there saw and talked with Ballard, the cashier and vice president of the bank, and at that time he asked Ballard for a loan of $1,500, and signed a note for that amount with the payee’s name blank, and gave Ballard the note. Ballard, not disclosing to Burke who was lending the money to him, had previously called Jenkins and asked him if he desired to make a loan, to which Jenkins replied, “Go ahead.” Ballard had made loans for Jenkins on previous occasions from Jenkins’ funds, but this fact was not known nor disclosed to Burke, and in fact Jenkins stated that he thought he did not know Burke when the money was loaned. Burke did not know that the money deposited
 
 *89
 
 to his credit in the bank was taken from funds in Jenkins ’ account in the bank by a check made payable to Burke and signed “T. A. Jenkins by C. P. Ballard.”
 

 The evidence also shows the following facts which are undisputed: After the note was given to Ballard, he entered Jenkins ’ name as payee, and kept the note in the bank for Jenkins. The note was signed April 18, 1930, and the bank was closed for liquidation on May 12, 1930, twenty-four days after the above transaction. At the time this transaction took place, the bank was not making loans, which fact Ballard knew, and did not disclose to Burke. Burke was a depositor in the bank.- At the time of the loan he had overdrawn his account, but when the bank was closed he had a sufficient balance to cover the amount of the note.
 

 It was also shown in the record that Ballard, the cashier of the bank, had previously made various loans for Jenkins. A list of eight substantial loans made by Jenkins through Ballard was presented in evidence, running from February 10th to April 29th of this same year, while Ballard was acting as cashier of the bank. With reference to this list, Ballard said: “Those are loans which I had of his which I had in charge,” and Jenkins also testified that he authorized Ballard to make these loans.
 

 It was entirely undisclosed to Burke that Jenkins was the principal in this loan, and the cheek which was issued on Jenkins’ account, from which the funds were secured, was signed T. A. Jenkins, by C. P. Ballard, as a bearer check, payable to P. J. Burke. Ballard concedes that he altered this check' by marking out ‘ ‘ order paid,” and also concedes that Mr. Burke knew nothing about the check at all. “All.he knew,” Ballard said, “was that he got the money.”
 

 It is contended on behalf of Jenkins that since Burke got the money from Jenkins, Burke is liable to Jenkins, because of the fact that he signed the note leaving the payee blank, and thus gave a
 
 prima facie
 
 authority
 
 *90
 
 to Ballard to fill in whatever payee he desired. It is contended on behalf of Burke that under Section 8119, General Code, since the name of the payee was not inserted in the note at the time it was signed by Burke, in order for the instrument to be enforced against Burke it should have been filled up strictly in accordance with the authority given, and that it was not so filled up.
 

 Section 8119, General Code, reads as follows:
 

 “When the instrument is wanting in any material particular, the person in possession thereof has a prima facie authority to complete it by filling up the blanks therein. And a signature on a blank paper delivered by the person making the signature in order that the paper may be converted into a negotiable instrument operates as a prima facie authority to fill it up as such for any amount. In order, however, that such an instrument when completed may be enforced against any person who became a party thereto prior to its completion, it must be filled up strictly in accordance with the authority given and within a reasonable time. But if such an instrument' after completion is negotiated to a holder in due course, it is valid and effectual for all purposes in his hands, and he may enforce it as if it had been filled up strictly in accordance with the authority given and within a reasonable time.”
 

 Under the facts of this record, the authority given was to fill in the name of the bank. Burke protested against having the name of the payee left blank when the note was presented to him by Ballard. He stated that Ballard said, “When I finish with this note it will read just the same as any other note you ever signed for this bank.” Ballard does not in terms deny this conversation. When he was asked “He said when he came in he wanted to borrow the money from the bank?” Ballard answered, “I don’t remember him saying that, no.” He does concede that as far as
 
 *91
 
 Burke knew, when he left the bank, he was borrowing the money from the bank, for he said, in answer to the question, “And as far as Mr. Burke knew when he left the bank he was borrowing the money from the bank? A. [Mr. Ballard] Well, he may have believed that, yes, sir.”
 

 Ballard also admits that Burke had borrowed money from the bank a time or two before. Burke says that it was once before.
 

 The name “Thomas A. Jenkins” was filled in in pencil, while the name of P. J. Burke was filled in in ink, and Ballard testified that Jenkins’ name was filled in after Burke left the bank.
 

 The instruction, then, while Ballard does not concede it in so many words, given by Burke to Ballard, was to fill in the name of the bank. However, if this were not the case, and if no instruction had been given at all to Ballard upon that point, there was an implied instruction that the note should be payable to the bank. Burke came to the bank for the loan. He applied to Ballard in his office at the bank, as cashier and agent of the bank. He signed a note in the bank at the desk of the bank’s cashier. There was a total lack of knowledge upon Burke’s part that the bank was not then making loans. This fact was both actually and constructively known to Ballard. Jenkins was never mentioned in the transaction. Burke did not know until a considerable period of time thereafter that Jenkins was the payee of the note. Under these circumstances, Burke had the right to assume that he was dealing with the bank and not with an undisclosed lender. There was an implied instruction, from his dealing with Ballard, that the bank should be named payee.
 

 “The cashier [of a bank] * * is ordinarily the active financial manager and agent of the bank. He is the agent of the bank and not of the directors.” 7 Corpus Juris, 549.
 

 
 *92
 
 ‘ ‘ The cashier is the executive officer, through whom the whole financial operations of the bank are conducted. He receives and pays out its moneys, collects and pays its debts, and receives and transfers its commercial securities.”
 
 Merchants Natl. Bank of Boston
 
 v.
 
 State Natl. Bank of Boston,
 
 77 U. S. (10 Wall.), 604, 650, 19 L. Ed., 1008.
 

 “The authority of an agent to lend money for his principal * * would * * * in many cases, be an incident to the authority of an agent given general authority to manage a business in which the loaning of money was a regular and customary occurrence. ’ ’ 1 Mechera on Agency (2d Ed), 741.
 

 It will hardly be necessary to go so far as to take judicial notice that the lending of money is a regular and customary occurrence in the ordinary business of banking.
 

 ‘“It has been said that the generally recognized authority of the cashier * * * extends to borrowing of money and the making of loans, and that, therefore, one dealing with such officer has a right to rely on the existence of such authority, unless the contrary appears.” 5 Ohio Jurisprudence, 345.
 

 Where the person .dealing with an agent has knowledge of the general character or scope of the agency, and there is nothing to excite his suspicion or put him on inquiry, he has the right to assume that the agent has all the powers necessary and incidental to the nature of his agency, as determined by the usual powers which such an officer or agent possesses, and that he is acting within the scope of such authority. 14A Corpus Juris, 352, note 69, and cases cited.
 

 It is true that many of the cases cited under these authorities deal with the liability of the bank or corporation for the acts of its agent, but we think the principle also applies in the present situation. Burke, without the least notice that the agent of the bank was acting for another principal than the one with whose
 
 *93
 
 powers lie was, to Burke’s knowledge, invested, entered into a transaction which was within the usual scope of the business of the bank, and within the usual authority of this particular officer. We think Burke had a right, then, to rely upon the fact that Ballard was acting for the bank, whose agent he was.
 

 Now, if Ballard was the agent of Burke in the lending of this money, then Burke cannot recover because the misconduct was the misconduct of his own agent. But if Ballard was the agent of Jenkins, the receipt of the note by Ballard was a receipt at the time when the note was incomplete, for the name of the payee had not been filled in; and the receipt by Ballard was a receipt by Jenkins. Burke became a party to the note prior to its completion, and in order for the note to be enforced against him, it must have been filled up “strictly in accordance with the authority given.” Section 8119, G-eneral Code. The note was not filled - up strictly in accordance with such authority, whether we consider the authority as express or implied. The controlling question in this case, therefore, is, was Ballard the agent of Jenkins, or was he the agent of Burke?
 

 It is contended that since Burke came to the bank to secure a loan, Ballard was his agent for that purpose, On the other hand, Jenkins testified that he authorized Ballard to make this particular loan, as well as other loans. Jenkins comes into court pleading that he made the loan, and testifying that he did not know Burke on April 18,1930, when the loan was made.
 

 There are just two ways in which it is possible for a man to lend money. He can either make the loan personally, or employ an agent or agents to make the loan for him. If Jenkins made the loan, since he did not make it personally, he must have made it through Ballard. As a matter of fact, Jenkins concedes that he authorized Ballard to do this specific thing. Ballard secured Burke’s signature upon the note, handled the
 
 *94
 
 transaction of the check, and filled in the name of Jenkins under definite instructions from Jenkins to make this loan. Ballard, then, was not the agent of Burke in this transaction. He w;as the agent of the lender of the money. Since he was the agent of Jenkins, when the note was delivered to Ballard, it was received by Jenkins through his agent, Ballard, as an incomplete instrument, and the limitation of Section 8119, General Code, applies. The note, was not filled up strictly in accordance with the authority given, and Burke could not legally be held upon the note.
 

 Authorities laying down the same general proposition are the following:
 

 Vander Ploeg
 
 v.
 
 Van Zuuk,
 
 135 Iowa, 350, 112 N. W., 807, 124 Am. St. Rep., 275, 13 L. R. A. (N. S.), 490;
 
 Boston Steel & Iron Co.
 
 v.
 
 Steuer,
 
 183 Mass., 140, 66 N. E., 646, 97 Am. St. Rep., 426;
 
 Cache Valley Commission Co.
 
 v.
 
 Genter Sales Co.,
 
 63 Utah, 574, 228 P., 203;
 
 Tower
 
 v.
 
 Stanley, Exr.,
 
 220 Mass., 429, 107 N. E., 1010;
 
 Simpson
 
 v.
 
 First National Bank of Roseburg,
 
 94 Ore., 147, 185 P., 913.
 

 Vander Ploeg
 
 v.
 
 Van Zuuk,
 
 above cited, holds that “Under the Negotiable Instruments Act the payee in a note, which was executed in blank and delivered to a third party who filled it out payable to the payee and delivered it to him, is not a holder in due course, and takes the instrument subject to a defense by the maker that it was not completed in accordance with the understanding of the maker and such third party. ’ ’
 

 The ninth paragraph of the syllabus in
 
 Simpson
 
 v.
 
 First National Bank, supra,
 
 is exactly in point. It reads as follows:
 

 “Where maker gave bank a note leaving blank space for name of payee, with authority to bank to insert its own name, and bank, without filling in blank, transferred note to depositor, depositor’s authority to fill in blank, under Section 5847, L. O. L., was limited to inserting name of bank, since the blank space under the
 
 *95
 
 statute must be filled in ‘ strictly in accordance with the authority given.’ ”
 

 The judgment of the Court of Appeals will be reversed, and judgment will be rendered for the plaintiff in error.
 

 Judgment reversed and judgment for plaintiff in error.
 

 Weygandt, C. J., Stephenson, Jones, Matthias, Bevis and Zimmerman, JJ., concur.