ELIZABETH M. W. NOURSE vs. CHARLES H. JENNINGS.

Suffolk.   January 15, 16, 1902. — February 28, 1902.

Present: HOLMES, C. J., LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Agency.   Estoppel*, By conduct.

In a suit to redeem from a mortgage on payment of $2,500 with interest and other charges, the defendant contended that the mortgage covered another note for $2,000 on which the plaintiff's name had been forged by one B., her son-in-law. The condition of the mortgage was the payment of "the sum of $2,500, together with any other sum or sums of money that I now owe to or hereafter

may borrow from the said J." [the mortgagee] during the life of this mortgage. At the request of B. the plaintiff had signed the $2,500 note after reading it and the mortgage without reading it or knowing what it was. B. falsely pretending to act for the plaintiff agreed in her behalf with the defendant, that the mortgage should cover the $2,000 note on which he had forged the plaintiff's name as a joint maker. The plaintiff testified that at the time of the transaction she had unlimited confidence in B. On two previous occasions the plaintiff had mortgaged her dwelling house to raise money to assist B. and the arrangements for those loans were conducted by B. but it did not appear that the defendant knew of the previous transactions. *Held,* that the plaintiff was entitled to redeem without paying the $2,000 note, that B. in making that note and agreeing that the mortgage should cover it did not act as agent of the plaintiff nor had she clothed him with any apparent authority to do those acts, even if the defendant had acted upon any of the facts relied on to show apparent authority, which he did not.

One who signs a paper without reading it is charged with knowledge of its contents.

LORING, J. This is a bill in equity to redeem a mortgage. The suit was heard by the court, a detailed statement of the facts found was made, and the testimony was taken by a commissioner under the rule; a decree was made allowing the plaintiff to redeem on payment of $2,672.50, with interest at six per cent from date of the final decree, and the case comes here on the defendant's appeal.

The mortgage is conditioned for the payment of " the sum of twenty-five hundred dollars, together with any other sum . or sums of money that I now owe to or hereafter may borrow from the said Jennings [the mortgagee] during the life of this mortgage." In addition to a note for the $2,500 mentioned in the mortgage, the defendant held a note for $2,000 on which the plaintiff's name had been forged as one of two joint makers, and the defendant claimed to hold his lien until that note was paid.

The facts out of which the litigation arose were these. One Ball, the son-in-law of the plaintiff, being in financial difficulties, forged the plaintiff's name as joint maker with himself on a promissory note for $2,000, and procured one Stephen Jennings, the father of the defendant, to discount it. This was in March, 1900. A month and one half afterwards he applied to said Stephen to advance to him $2,500 on a second mortgage of the plaintiff's dwelling house in Boston, and stated that that mortgage should also secure the $2,000 note mentioned above. This was done without the knowledge of the plaintiff.

Stephen Jennings was indebted to the defendant, and before the transaction was carried through the defendant agreed to take the two notes in payment or in part payment of a debt due him from his father Stephen; under that arrangement the mortgage note for $2,500 and the mortgage were made directly to the defendant. After the arrangement for the loan of $2,500 and after it had been arranged that the mortgage should secure that sum and the note for $2,000, and on the morning on which the papers were to be passed, Ball told the plaintiff that he was in temporary need of money and asked her to sign a note for $2,500 on the understanding that he would pay it at maturity. She consented and went to Ball's office to sign the paper. She testified that she signed the note after reading it, and also two other papers without reading them, on Ball's assurance that they were only duplicates of the note. One of these two papers was the mortgage and the other was an agreement not to further incumber the house covered by the mortgage in question, in consideration of the defendant's not recording the mortgage in the registry of deeds. There was a dispute as to whether she signed a fourth paper or not; the fourth paper was a direction to the defendant to pay the proceeds of the mortgage note for $2,500 to Ball.

Ball disappeared in September, 1900, and it does not appear that he has been heard from since then. The plaintiff brought this bill to redeem after tender of the principal and interest of the note for $2,500; and the decree was made on that footing.

At the trial there was a direct conflict between the plaintiff and one Cox, introduced as a witness by the defendant, as to what took place when the note for $2,500, the mortgage and the agreement not to incumber were signed. Cox testified that he produced the note for $2,000 at that time, and that it was then examined by the plaintiff. The presiding judge who saw the witnesses on the stand believed the plaintiff, and the defendant does not seek to overturn his finding on that point.

The defendant now contends that although the plaintiff did not authorize Ball to agree, that the mortgage should cover the note for $2,000 as well as the note for $2,500, yet that agreement was made by Ball and was within the apparent scope of

Ball's authority as the agent of the plaintiff. The facts relied on by the defendant in making this contention are: the plaintiff's testimony that she had "unlimited confidence" in Ball; the fact that in 1897 Ball had induced the plaintiff to mortgage this same house in the sum of $5,000 for his benefit, and in 1898 for the sum of $12,000, $5,000 of which were applied to the prior mortgage of $5,000 and the balance was given to Ball; that in each of these transactions the negotiations for the mortgages were made by Ball. The mortgage for $5,000 ran to Stephen Jennings, and that for $12,000 to a savings bank, and was placed by Stephen Jennings; and, lastly, by an undated letter addressed to Stephen Jennings authorizing him to place a mortgage on the dwelling house in question "for a sum not exceeding $10,000 (ten thousand dollars) as arranged for with you by Mr. Ball, the proceeds above the present mtg. to be paid to him."

Had Ball been acting for the plaintiff in making the agreement, that the mortgage should cover the note for $2,000 as well as the note for $2,500, and had the undated letter been addressed to the defendant in place of to Stephen Jennings, and had he acted on the faith of it, there possibly might have been some ground for the defendant's contention. But Stephen Jennings testified, that he received this undated letter in September, 1900, five months after the execution of the mortgage in question. The undated letter, therefore, must be laid out of the case in this connection.

Apart from the undated letter, it is plain that Ball did not act as agent for the plaintiff; that the plaintiff did not clothe him with any apparent authority, and that the defendant did not act on any facts whether they amounted to apparent authority or not.

Ball, in making the arrangement for the loan of $2,500 and the arrangement, that the mortgage should secure the note for $2,000 as well as the note for $2,500, was acting for his own benefit and without the knowledge of the plaintiff. He was not acting as her agent.

The fact that the plaintiff had mortgaged her dwelling house on two previous occasions to raise money to assist Ball, coupled with the fact that the arrangements for those loans for Ball's

benefit were conducted by Ball, did not clothe Ball with an apparent authority to enter into agreements in behalf of the plaintiff for additional incumbrances on her property. And, finally, there was no evidence that the defendant knew of any of these previous transactions or that he acted on them.

The defendant's second contention is that the plaintiff was negligent in the matter and is estopped to deny Ball's authority to make the agreement. The plaintiff is charged with knowledge of the paper she signed without reading; *Grace* v. *Adams*, 100 Mass. 505; that she admits by tendering the amount of that note, and, admitting that, she contends that she need not pay the note for $2,000, because it is not a debt due from her.

The defendant's contention here amounts to this, that if the plaintiff had acted as a person of ordinary prudence would have acted, she would have asked Cox why the additional clause as to other indebtedness was inserted in the mortgage; and if she had made that inquiry, she would have been told that it was to cover the note for $2,000, on which her name was forged, and, learning that, would have consented to sign the mortgage with that clause in it to cover that note. Apart from other objections to this contention, it is enough to say, that there is no reason to suppose, that if she had made that inquiry and received that information, she would have signed the mortgage at all.

As to the defendant's third contention, we agree with the finding of the presiding judge that an unqualified tender was made by the plaintiff's attorney. We express no opinion on the defendant's contention that the tender would have been bad, if the plaintiff had insisted upon the surrender of the note paid by the money tendered.

The defendant's last contention is that this case comes within *Joslyn* v. *Wyman*, 5 Allen, 62. Had the plaintiff agreed by word of mouth that this mortgage should stand as security for the note for $2,000, even though it was not her debt, the case might have come within that decision. But in this case the plaintiff signed the mortgage in entire ignorance of that note, and never made such an agreement.

*Decree affirmed.*

*E. K. Arnold*, for the plaintiff.
*A. M. Lyman*, for the defendant.