SAMUEL F. TOWER vs. HARRY R. STANLEY, executor.

SAME vs. HARRY R. STANLEY.

SAME vs. HARRY R. STANLEY, executor.

Suffolk.    November 17, 1914. — March 2, 1915.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & CROSBY, JJ.

*Bills and Notes,* Alteration, Holder in due course, Incomplete instrument. *Interest. Agency. Estoppel. Assignment,* Completion of signed incomplete instrument. *Insurance,* Life: assignment of policy. *Pledge. Equity Jurisdiction,* To relieve from results of fraud, To redeem pledge. *Fraud.*

Where the payee of a negotiable promissory note, which bears no provision as to payment of interest, fraudulently and without the knowledge or consent of the maker alters it by increasing its amount and inserting a provision for interest at the rate of six per cent and then transfers it by indorsement for value to one who takes it without knowledge or notice of the fraud, the indorsee under R. L. c. 73, § 141, may enforce payment of the principal of the note by the maker according to its original tenor; and, if it appears that the maker had agreed orally with the payee to pay interest at the rate of five per cent, the indorsee also may enforce payment of interest at that rate.

If the maker of a negotiable promissory note signs it, leaving a blank where the name of the payee should appear, and in good faith delivers it for value to one who is authorized to insert only his own name as payee, and if the person who so receives the note fraudulently alters its amount and either alters the rate of interest or inserts a rate where there was none written and delivers the note, still having a blank space where the payee's name should be written, to a third person who receives it in good faith and gives value for it and then writes in his own name as payee, the note when delivered to the third person is under R. L. c. 73, §§ 25, 31, an incomplete instrument, and the third person, not having completed it, as required by § 31, in accordance with the authority given by the maker, is not a holder of the note in due course, but is put upon inquiry as to the authority for filling in the blank spaces and is not entitled to enforce the note against the maker either in its altered state or, under § 141, according to its original tenor.

The former rule of common law that, where the maker of a negotiable promissory note when he delivered it left blank spaces therein, he was estopped to deny the authority of a *bona fide* purchaser of the note who in good faith filled in the blanks, was changed by R. L. c. 73, § 31, so that, when such *bona fide* purchaser of the note fills in the blank spaces, the maker is bound by the note only in case the spaces are filled in strictly in accordance with the authority he gave and within a reasonable time.

If the maker of a negotiable promissory note signs and delivers to the payee, as security for the payment of the note, a policy of insurance upon his life and an instrument of assignment of the policy and of power of attorney to collect its

proceeds and leaves blanks in the instrument where the names of the assignee and the attorney and the amount of the consideration should be written, giving to the pledgee authority to insert therein only his own name and the actual amount of the note, and the pledgee fraudulently alters the note by raising its amount and inserting a false rate of interest and then negotiates it to a holder in due course to whom he also delivers the insurance policy and the instrument of assignment and power of attorney, after having written therein the holder's name and one dollar as consideration, the holder in due course of the note may retain the insurance policy as security for the payment of the note by the maker according to its original tenor, the insured being estopped to deny the authority to fill in the blank space for the name of the assignee as it was filled in.

But if, after the policy and instrument of assignment and of power of attorney have been delivered to such holder in due course, the fraudulent pledgee receives another note from the insured for another loan made to him, he and the insured agreeing that the policy also shall be security for the payment of such additional loan, and the fraudulent pledgee thereupon without authority alters the second note and delivers it to the assignee of the policy, the insured is not estopped to deny the authority of the fraudulent pledgee to make an agreement that the policy should be security for the additional loan and the assignee has no right to retain the policy as security for such second note, either according to its original or according to its altered tenor.

THREE BILLS IN EQUITY, filed in the Supreme Judicial Court, the first on October 10 and the second and third on October 20, 1913.

In the first bill the plaintiff sought to compel the defendant, as executor of the will of Sumner C. Stanley, to deliver to him a policy of life insurance issued by the Connecticut Mutual Life Insurance Company and an instrument purporting to assign the plaintiff's rights therein to Sumner C. Stanley, alleging that the assignment, "although apparently bearing the plaintiff's signature, was, if signed by the plaintiff, materially altered after the plaintiff signed it, to wit, the name of the assignee and the name of the attorney were changed, and the amount stated as the consideration for the assignment was changed, and the plaintiff never made any assignment of the said policy to Sumner C. Stanley, or to any person in behalf of the said Sumner C. Stanley, or to the defendant, and the said assignment constitutes a cloud upon the plaintiff's title to said policy."

In the second suit, which was against the defendant personally, the plaintiff sought to have declared void and cancelled a note for $1,500 payable to the defendant and purporting to be signed by the plaintiff.

In the third suit, which was against the defendant as executor

of the will of Sumner C. Stanley, the plaintiff sought similar relief as to three notes, one for $400 and one for $1,000, each bearing interest at six per cent, dated May 15, 1906, payable in twelve months to the order of George E. Williams and indorsed by him, and a third note for $1,500 bearing interest at six per cent, dated June 26, 1907, and payable in twelve months to the order of the defendant as executor of the will of Sumner C. Stanley.

The suits were heard together by *Hammond,* J. He found the following facts among others:

In May, 1906, the plaintiff held the policy of life insurance on his own life, described in the first suit. He knew one George E. Williams, who was then general agent in Boston of the Connecticut Mutual Life Insurance Company, and shortly before May 15 he went to Williams's office to obtain a loan of $400 from this company on the security of this policy. Williams informed him that this company would not lend money on its policies, but that Williams himself, as administrator or guardian, had funds of two of his nieces, and would make a loan of $400.

A few days later, on May 15, 1906, Williams went to the English High School building, where the plaintiff was a teacher, and talked with him in the corridor there. No one else was present. The plaintiff had the insurance policy referred to, and Williams brought to the high school building a partially completed typewritten form of assignment of the policy and a carbon copy thereof, a receipt, two notes, and cash or checks amounting to $400. The plaintiff then signed the notes and the form of assignment, and Williams signed the receipt. Williams then delivered to the plaintiff $400 — $200 by a check for that amount. It did not appear how the other $200 was paid. Williams then also delivered to the plaintiff a receipt, dated May 15, 1906, and the carbon copy of the assignment, both of which were offered in evidence. When delivered to the plaintiff on May 15, 1906, the receipt and the carbon copy of the assignment were in the same form that they were at the trial, and the copy had, in addition, the name of George E. Williams written in in pencil where it appeared at the time of the trial.

"At the same time the plaintiff delivered to Williams the insurance policy above mentioned, and the assignment of this policy. The copy of the assignment which Williams gave to the plaintiff

was a carbon copy of the typewritten portions of the original, which Williams retained after it had been signed by the plaintiff. I find that at the time when the plaintiff signed this assignment, it did not bear the name of S. C. Stanley as assignee and attorney; that it was not signed in the presence of E. R. Wellington. I find either that the blanks for the consideration and for the names of the assignee and of the attorney were blank when the plaintiff affixed his signature to this assignment, or that these blanks were then filled in as they were filled in on the copy which Williams then handed to the plaintiff. I am in doubt as to which of these is true. I do not find any erasures in the assignment.

"I find that the transaction of May 15, 1906, was substantially as stated in the receipt above referred to. It was a loan of $400 from Williams to the plaintiff at five per cent. The plaintiff believed, and was justified in believing, that he was dealing with Williams, and with Williams alone, either individually or in his representative capacity above stated, and he expected the notes to run to Williams as payee, and he did not contemplate that Williams would transfer the assignment to any other person or would insert in the assignment the name of any person other than Williams, but nothing was said between them on this subject. Upon cross-examination the plaintiff testified that the only thing in which at that time he was concerned was whether he should be held strictly to pay the note at its maturity.

"At the same time the plaintiff signed two notes, being notes dated May 15, 1906, referred to in the third suit. These notes are now one for $400 and one for $1,000. I find that when they were signed the total amount payable on the two notes was $400, and that since they were signed the amounts payable have been altered. It is probable that the notes were originally for $200 each, but I am in doubt as to this, except that I find that the total amount of the two notes was originally $400 only.

"The rate of interest agreed upon between Williams and the plaintiff on this $400 loan was five per cent. I think that when the notes were signed they contained no provision as to interest.

"A short time after the two notes and the assignment were signed by the plaintiff, probably upon the same day, Williams had the signature of Miss E. R. Wellington affixed as a witness to the signature of the plaintiff to the assignment, and had the

name of S. C. Stanley as assignee and as attorney inserted. If the blanks on the assignment as to the assignee and the attorney and the consideration were not filled in when the plaintiff signed the assignment, Williams inserted the word 'One' and the name now appearing on the assignment. As is found above, these spaces may have been left blank. I find that he had no authority from the plaintiff to insert the name of S. C. Stanley as assignee or attorney, and no authority to add the name of the witness.

"On the same day, or shortly after these two notes were signed, Williams changed the amounts payable so that they were one for $400 and one for $1,000, and added the interest clause, making the interest at six per cent.

"Sumner C. Stanley, shortly after this, took the two notes of May 15, 1906, and gave Williams a check dated May 15, 1906, for $1,414, and then received the two notes and the insurance policy and the assignment of the insurance policy. The insurance policy and the assignment and the notes were found among the papers of S. C. Stanley by the present defendant, Harry R. Stanley, his executor. I think it probable that the check, although dated May 15, 1906, was originally for $1,400, and as the transaction was delayed a few days, the amount was increased to $1,414.

"In June, 1907, the plaintiff, desiring to borrow $600 more, again applied to Williams, and signed two notes for an aggregate sum of $600. These are the notes for $1,500 each, one dated June 26, 1907, described in the third suit, and the other dated November 16, 1911, the note referred to, though inaccurately described, in the second suit. Both notes, when signed, were dated June 26, 1907. I am unable to find the amounts payable when signed, except that I find that the amount payable was filled in on each note, and the total of the amounts payable on both notes was $600. The agreed rate of interest on the loan was five per cent. I am unable to find whether the interest rate was filled in at five per cent originally on each of these, but has since been altered to six per cent on one, and two per cent on the other, or whether these notes when signed had upon them no provisions as to interest. I find that each note when signed was blank as to the name of the payee, and that the plaintiff authorized Williams to insert his own name as payee, but gave him no authority to change the amounts or to insert six per cent as the interest rate. Nor did he

give Williams any authority, except such as is implied by law from the findings above made, to insert the name of any other person as payee.

"On July 5, 1907, the plaintiff received $600 from George E. Williams. He received in all from Williams $1,000; $400 on May 15, 1906, and $600 on July 5, 1907.

"Shortly after June 26, 1907, the defendant, Harry R. Stanley, gave a check for $1,500 to George E. Williams, and received the note for $1,500 dated June 26, 1907, signed by the plaintiff. When received by the defendant it was filled in as to the amount, $1,500, and interest rate, six per cent, but the name of the payee was blank. The defendant filled in his own name as executor in the blank for the name of the payee. I find that the defendant, as well as his testator, acted in good faith and without notice of any infirmity as to this note or the notes of May 15, 1906.

"No written assignment of the insurance policy was made by the plaintiff other than the assignment already referred to. On June 26, 1907, when the plaintiff made application to Williams for a loan of $600, he asked Williams if any further assignment was necessary, and Williams told him that none was necessary. The plaintiff testified that he signed the note 'expecting that the policy would be collateral for the new loan,' and that he 'intended to borrow the second $600 upon the security of the policy,' and I find this to be true, if material.

"On December 13, 1911, the defendant gave Williams two checks, aggregating $1,500, and received the note then dated November 16, 1911, for $1,500. When the defendant received this the name of the payee was blank, and he inserted his own name as payee. The amount payable then appeared as $1,500, and the interest rate as two per cent, payable monthly.

"In this transaction, also, I find that the defendant acted in good faith.

"There were no dealings between the plaintiff and the defendant, or Sumner C. Stanley, prior to these suits. The plaintiff, until shortly before these suits were begun, did not know that the defendant or Sumner C. Stanley held any of the notes in question, or the assignment or the policy. The plaintiff paid interest to Williams semiannually at five per cent on the loans of $400 and $600, the last payments of interest made by him being in June,

1913. Williams paid interest to Sumner C. Stanley and to the defendant on these notes, at the rate of six per cent until Williams's death in the summer of 1913."

The single justice reported the cases to this court for determination.

*J. B. Studley*, for the plaintiff.

*J. M. Hallowell*, for the defendant.

BRALEY, J. The plaintiff's promissory notes described in the second and third suits having been materially altered after delivery and before maturity, without his knowledge or consent, by one Williams, of whom he hired the money, raising the amounts, and also in two of them inserting a clause for interest and in the other two by increasing the rate of interest, the defendant at common law could not enforce either note against the maker. *Greenfield Savings Bank* v. *Stowell*, 123 Mass. 196, 198, and cases cited.

But under R. L. c. 73, § 141, this rule was changed and "when an instrument has been materially altered and is in the hands of a holder in due course, not a party to the alteration, he may enforce payment thereof according to its original tenor." The defendant, whose testator was upon the record an innocent purchaser for value, accordingly could recover on the first two notes the amounts for which they were originally given with interest thereon at five per cent, the rate agreed upon by the plaintiff and Williams. R. L. c. 73, § 69. *Thorpe* v. *White*, 188 Mass. 333. *Pierce* v. *Boston Five Cents Savings Bank*, 129 Mass. 425, 434. R. L. c. 73, § 3.

But under the finding that when the two last notes were signed and delivered the name of the payee was in blank and Williams was authorized only to fill in his own name as payee, the plaintiff contends that the defendant is not a holder in due course. If they had been filled as authorized and then negotiated, the defendant would have held in due course instruments complete and regular upon their face without notice of any infirmity, as defined in R. L. c. 73, §§ 69, 73.

The notes, however, under § 25, requiring that "where the instrument is payable to order the payee must be named or otherwise indicated therein with reasonable certainty," were incomplete instruments, not regular upon their face. *Shaw* v. *Smith*, 150 Mass. 166, 167. *Colson* v. *Arnot*, 57 N. Y. 253, 259.

It was well settled before the statute that the plaintiff having issued these notes, with the intent to become bound for the amounts stated, any bearer who came regularly by them could fill the blanks with his own name. The maker, having put his commercial paper in circulation, was estopped to set up the defect and a holder in good faith and for value is deemed to have been given implied authority to fill the blanks with appropriate terms. *Ives* v. *Farmers' Bank,* 2 Allen, 236, 240. *Burgess* v. *Blake,* 86 Am. St. Rep. 78, 107, 108, where many of the cases are collected.

By § 31 this rule was changed. While the person in possession has authority *prima facie* to complete it by filling up the blanks therein, it cannot when completed be enforced against any person who became a party thereto prior to completion, unless filled up in accordance with the authority given, and within a reasonable time. *Hartington National Bank* v. *Breslin,* 88 Neb. 47. The general purpose of the statute was to make the law of negotiable instruments uniform, and we are unable to perceive any sufficient reason why §§ 25, 31 and 69, should not be construed in conformity with their express meaning.

It is therefore plain that the defendant, while a holder for value, is not a holder in due course and having purchased with notice upon their face that when delivered by the maker they were in an inchoate state, he was put upon inquiry as to the authority of Williams, and the plaintiff is not bound by the notes in the defendant's possession. *Boston Steel & Iron Co.* v. *Steuer,* 183 Mass. 140. *Thorpe* v. *White,* 188 Mass. 333. *Fillebrown* v. *Hayward,* 190 Mass. 472. *Liberty Trust Co.* v. *Tilton,* 217 Mass. 462. R. L. c. 73, §§ 69, 73, 75.

By the first bill the plaintiff further asks that the policy of life insurance he assigned to Williams as collateral security for the payment of the first notes, and which they subsequently agreed should be held to secure the second notes, but fraudulently transferred by Williams to the testator when he purchased the first notes, may be delivered to him and the assignment cancelled. We assume in the defendant's favor from the findings of the single justice, that when delivered by the plaintiff the name of the assignee had not been inserted.

While upon the record Williams had no authority to insert any

name but his own, or to add the name of the witness, or write in the consideration, and the insertion of the name of the testator as assignee was in furtherance of the fraud practiced upon the plaintiff, yet the assignment had been given for the amounts he actually had borrowed. It was unnecessary that it should be attached to the policy, and if it had been completed and afterwards was altered materially it could have been avoided. *Bacon* v. *Hooker,* 177 Mass. 335. The plaintiff however was not obliged to deliver an incomplete instrument. It recites that "upon payment of loan with interest by me at any time, policy is to be returned to me and this assignment to be then null and void," and by leaving the name blank the testator, who acted in good faith, was misled into the belief that Williams, who had possession of the policy, also had the right to deal with the assignment by filling in the blank in connection with the first notes, the regularity of which upon their face was unquestioned. The plaintiff is precluded from now contending that the instrument is invalid. *Scollans* v. *Rollins & Sons,* 179 Mass. 346, 352. *Russell* v. *American Bell Telephone Co.* 180 Mass. 467, 470. *Westlake* v. *Dunn,* 184 Mass. 260, 262. *Herman* v. *Connecticut Mutual Life Ins. Co.* 218 Mass. 181.

The first notes being valid for their original tenor the plaintiff concedes that he must pay the amounts, and it would follow that upon payment he would be entitled to a cancellation of the assignment and a return of the policy.

The transaction of the second loan to the plaintiff was not in any way connected with the first loan. At that time, but unknown to the plaintiff, the policy which he agreed should be held as collateral security for the second loan, had been assigned to the defendant's testator. The assignment had passed from Williams's possession and it had ceased to be an instrument in blank, nor does it appear that the defendant knew of its original condition. The right of the defendant to retain the assignment as security for the second notes accordingly depends upon the scope of the agency of Williams, and the plaintiff is not estopped from showing, as the single justice found, that he had no authority to borrow of the defendant or to make the pledge. *McNeil* v. *Boston Chamber of Commerce,* 154 Mass. 277, 285. *Nourse* v. *Jennings,* 180 Mass. 592.

It is urged, citing *Joslyn* v. *Wyman,* 5 Allen, 62, that, having acted in good·faith, it would be inequitable to allow the plaintiff to redeem without paying the amount of the original loans. It was there held that, although a mortgage could not be enforced as security for a debt not within its terms, yet as the parties had made an oral agreement that it should stand as security for a further loan, the mortgagor could not have it discharged in equity without payment of the money lent. But as the plaintiff never agreed that the policy should be transferred to the defendant as security for the payment of any sum whatever, the present case is not within that decision or the cases which have followed it. *Nourse* v. *Jennings,* 180 Mass. 592. *Whitney* v. *Metallic Window Screen Manuf. Co.* 187 Mass. 557, 560.

The jurisdiction of a court of equity to afford complete relief is unquestioned. *Busiere* v. *Reilly,* 189 Mass. 518. *Rice* v. *Winslow,* 182 Mass. 273.

And the defendant, as executor, upon payment with interest of the first notes, is to deliver not only the policy and assignment duly cancelled but, as executor and individually, the second · notes to the plaintiff, who is to recover but one bill of costs. *Smith* v. *Everett,* 126 Mass. 304.

*Ordered accordingly.*