[Civ. No. 3991. Second Appellate District, Division Two.—June 30, 1925.]

## FANNIE KRUGER, Administratrix, etc., Respondent, v. GEORGE T. VERNON et al., Appellants.

[1] CHATTEL MORTGAGE — DELIVERY OF RING TO MORTGAGEE — EVIDENCE—FINDING.—In this action to foreclose a chattel mortgage on a piano, certain household furniture, a watch and a diamond ring, in which the defendants filed a cross-complaint in conversion alleging, among other things, that they tendered to plaintiff the amount due on the note secured by the mortgage, and offered to pay the same, provided plaintiff would satisfy the mortgage and return the ring, which defendants alleged was delivered to and was in possession of plaintiff, the evidence was sufficient to justify the finding that the ring was not delivered to and was never in the possession of plaintiff.

[2] ID.—OSTENSIBLE AGENCY—KNOWLEDGE OF PRINCIPAL.—Where said chattel mortgage of which plaintiff was the assignee, expressly declared that all the mortgaged property was located in and about certain described premises and that the same was to remain there and not be removed without the consent of the mortgagee, and the evidence showed that at the time plaintiff bought the note and mortgage through a certain broker she had no knowledge of the fact that defendants had delivered the ring to said broker, and she had no knowledge of the facts upon which defendants relied to give color of authority in said broker to accept and hold the ring for her, it could not be said that the broker had ostensible authority to accept and hold the ring as plaintiff's agent.

[3] ID.—GENERAL AGENCY—EVIDENCE—ESTOPPEL.—The fact that said broker had acted as plaintiff's agent in a number of transactions in which she purchased securities through him, did not make him her general agent to purchase securities for her, where in each instance he was clothed with special authority only; and the fact that said broker had acted for plaintiff on one or more previous occasions did not estop plaintiff to deny that she authorized said broker to accept and hold the diamond ring as her agent.

[4] ID.—TENDER—UNAUTHORIZED CONDITIONS—EVIDENCE—FINDINGS.— The only tender made by defendants having been an offer to pay the amount due upon the note, provided plaintiff would deliver the diamond ring to defendants, and the evidence having shown that plaintiff did not have possession of such ring, either

3. See 1 Cal. Jur. 742.
4. See 24 Cal. Jur. 524; 26 R. C. L. 640.

actually or constructively, said offer was inefficient as a tender, and the trial court properly found that defendants did not tender to plaintiff the amount due on the note.

[5] ID.—VALUE OF RING—INCONSEQUENTIAL FINDING.—In such action, plaintiff not having been accountable for the diamond ring, the trial court's finding that the ring was of a value much less than that alleged by defendants, was inconsequential.

[6] ID.—GENERAL AGENCY—EVIDENCE—POSSESSION OF PLAINTIFF'S PROPERTY.—In such action, defendants' counsel, on the cross-examination of plaintiff, having asked her if it was not a fact that the broker to whom defendants had delivered the diamond ring, at the time he absconded, had in his possession securities, papers and documents which she had entrusted to him, which question doubtless was for the purpose of showing that said broker was plaintiff's general agent in all matters pertaining to her investments, the court did not err in sustaining an objection to the question upon the ground that it was irrelevant and immaterial; and the sustaining of such objection was not prejudicial to defendants' rights where, elsewhere in her cross-examination, plaintiff testified that said broker did not have charge of her papers or her safe-deposit box.

[7] ID.—POSSESSION OF RING BY BROKER—HEARSAY EVIDENCE.—In such action, it having been proved by uncontradicted evidence that the ring had been delivered to the broker through whom plaintiff purchased the note and mortgage, and that he had it in his possession, the trial court did not err when, of its own motion, on the direct examination of plaintiff's assignor, who had been made a party defendant, her counsel having sought to show that said broker told her that he had the ring in his possession at the time he transferred the note and mortgage to plaintiff, the court said that "Anything he [the broker] said may be stricken here. We don't want hearsay testimony in here."

(1) 11 **C. J.**, p. 596, n. 41.   (2) 2 **C. J.**, p. 956, n. 86.   (3) 2 **C. J.**, p. 442, n. 28, p. 465, n. 26.   (4) 11 **C. J.**, p. 679, n. 12.   (5) 38 Cyc., p. 1970, n. 3.   (6) 4 **C. J.**, p. 969, n. 40.   (7) 4 **C. J.**, p. 1010, n. 7.

APPEAL from a judgment of the Superior Court of San Diego County.  S. M. Marsh, Judge.  Affirmed.

The facts are stated in the opinion of the court.

L. E. Dadmun for Appellants.

W. S. Staley for Respondent.

FINLAYSON, P. J.—This is an action to foreclose a chattel mortgage given to secure a promissory note for the principal sum of $150. The appeal is by the defendants George T. and Zoe Vernon. The action was begun by Lillian M.. Mann, who departed this life subsequently to the appeal but prior to the submission of the case here. The administratrix of her estate has been substituted in this court. Because it will conduce to brevity, we shall refer to the decedent, throughout this opinion, either as the "plaintiff" or as the "respondent," notwithstanding her death and the substitution of her personal representative.

On January 10, 1917, at San Diego, the defendant Anna Archer loaned the Vernons the sum of $150 and took from the latter their promissory note for that amount payable to her order three months after date. To secure payment of the note, and contemporaneously with its execution, the Vernons executed a chattel mortgage to Mrs. Archer. The property mortgaged consisted of a piano, certain household furniture, a watch and a diamond ring. The mortgage expressly declares that all of the mortgaged property is "located and contained in and about the premises at No. 3536 Grim Street, San Diego, Cal.," and that "the same is to remain at aforesaid address and not to be removed without the consent of the mortgagee herein."

On March 11, 1919, the mortgagee, for the consideration of $150 paid to her by plaintiff, executed to the latter a written assignment of the note and mortgage. Thereafter plaintiff brought this action. The Vernons filed an answer and likewise a cross-complaint. In the latter pleading the cross-complainants allege that the diamond ring mentioned in the chattel mortgage had been delivered to and is now in the possession of plaintiff; that its reasonable value is $700; that on November 29, 1920, they tendered to plaintiff an amount equal to the principal of the note and the accrued interest thereon, and offered to pay the same, provided plaintiff would cancel the note, satisfy the mortgage and deliver the diamond ring to them; that plaintiff refused to do any of these things, and that by reason of such refusal plaintiff has wrongfully converted the ring to her own use. Wherefore they pray damages against plaintiff in the sum of $700, and that the latter do not recover on the note or mortgage. In

her answer to the cross-complaint plaintiff denied that the diamond ring was ever delivered to her, and denied all knowledge of the ring save such as may be afforded by the mortgage itself. The court found that the ring never was delivered to plaintiff and that she never had possession of it; also that the Vernons never tendered to plaintiff the amount due on their promissory note or any part thereof. As conclusions of law from its findings of fact, the trial court found that plaintiff did not convert the ring to her own use; that the Vernons have not been damaged in the sum of $700 or in any amount whatever; that plaintiff is entitled to recover from the Vernons the principal of the note with interest thereon from September 10, 1919, and to have the mortgage foreclosed; and that the action should be dismissed as to the defendant Anna Archer. Judgment was entered accordingly, and, as we have said, the appeal therefrom is taken by the Vernons.

Appellants present several points. [1] The contention upon which they lay especial emphasis is that the evidence is insufficient to sustain the finding that the diamond ring was not delivered to and was never in the possession of respondent. At or about the time when the note and mortgage were executed, one of the mortgagors, without any previous authority from the mortgagee, delivered the ring to a brother-in-law of respondent, one S. H. Kruger, who appears to have conducted a brokerage business in San Diego and who absconded on August 8, 1919. It is probable that Kruger disposed of the ring for his own use and benefit before he left San Diego, or that he took it with him when he departed for regions unknown. At any rate, the ring was never in the actual possession of respondent or of her assignor, Mrs. Archer. Kruger represented Mrs. Archer in the matter of her loan to the Vernons and in the negotiations which led up to the execution of the note and mortgage. He also represented respondent in the matter of the assignment of the note and mortgage to her. Appellants claim that because they delivered the ring to Kruger he held it for Mrs. Archer as her agent while she was the owner of the note and mortgage, and that upon and after the assignment of those documents to respondent he held it for the latter as her agent. Wherefore it is claimed that Kruger's possession of the ring, at all times subsequent to the assignment of the

note and mortgage to respondent, was her possession, and hence that the finding that she never had possession of the ring is unsupported by the evidence.

We think the evidence was amply sufficient to support the finding. The sole grounds advanced by appellants to support their contention that upon the assignment of the note and mortgage to respondent Kruger held the ring as her agent are: (1) that respondent conferred upon Kruger ostensible authority sufficient to make him respondent's agent to hold the ring for her; (2) that Kruger was respondent's general agent and as such was authorized to represent her in all matters pertaining to her investments; and (3) that respondent is estopped from denying that she authorized Kruger to hold the ring for her as her agent. No other reason has been suggested by appellants why it should be held that Kruger's possession of the ring was respondent's possession, and we therefore shall confine ourselves to a consideration of the three theories so advanced by them.

[2] We do not think the evidence warrants the conclusion that respondent, either intentionally or by want of ordinary care, caused or allowed appellants to believe that Kruger was authorized to hold the ring for respondent as her agent. That is to say, so far as appellants are concerned, respondent did not confer upon Kruger ostensible authority for the purpose mentioned, or any authority beyond that actually delegated to him. Respondent, who took the witness-stand in her own behalf in the court below, testified that she never had possession of the ring, that she never saw it, and that she did not learn that it had been delivered to Kruger until some time after she had purchased the note and mortgage; that shortly before the purchase she had arranged with Kruger to let her know whenever he had a good mortgage to sell and give her an opportunity to buy it; that when she was not in San Diego Kruger, if he had a mortgage to sell, would write her, and if he said the security was good she would send him the money to purchase the paper; that she was in San Francisco at the time when she bought this note and mortgage from Mrs. Archer; that Kruger wrote to her and told her he had a mortgage to sell—referring to the mortgage here in question; that she mailed him a check for the necessary amount, and that Kruger, at San Diego, acted

for her in procuring the assignment for Mrs. Archer; that if at any time when she was in San Diego Kruger told her he had a good mortgage for sale she always looked at the property, and then if the security met with her approval she would purchase it; that prior to the assignment to her of this particular mortgage she had procured through Kruger, during her absence from San Diego, the assignment to her of three other mortgages executed by other mortgagors; and that she had seen Kruger upon but a few occasions prior to her purchase of the Vernon mortgage.

Manifestly, Kruger possessed no ostensible authority such as is claimed by appellants and of which the latter can avail themselves in this action. In each instance when respondent purchased a mortgage through Kruger she made him her special agent for that particular transaction. If Kruger had held the ring for respondent as her agent, then the contract of mortgage, in so far as it related to the ring, would have been converted into a contract of pledge. But respondent, when purchasing the note and its security, knew naught of a pledge. She knew only of a mortgage, and supposed that she was purchasing a mortgage and the note secured thereby. An agent has such authority as the principal actually or ostensibly confers upon him. (Civ. Code, sec. 2315.) The actual authority conferred upon Kruger by respondent did not authorize him to procure the assignment to his principal of a pledge. Respondent actually authorized Kruger to procure the assignment to her of the only security of which she had any personal knowledge, namely, a mortgage, not a pledge, and for that purpose she conferred upon him special authority. To entitle appellants successfully to claim that respondent conferred upon her agent ostensible authority sufficient to authorize him to procure the assignment to his principal of a contract of pledge, they must first show that, at the time when respondent purchased the note and mortgage, they had knowledge of the facts which they claim gave color of authority to the agent. Their contention that Kruger possessed ostensible authority of the nature and to the extent claimed by them is based upon the fact that Kruger represented respondent in a number of other similar transactions. But there is no evidence that appellants possessed any knowledge of these other transactions at the time when Kruger exercised the actual authority which respond-

ent specifically conferred upon him in this particular transaction. Ostensible authority, as defined by our statute, "is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess." (Civ. Code, sec. 2317.) As a necessary ingredient of this definition it is held that a party maintaining that such authority existed "must prove that he knew the facts giving color of authority to the supposed agent." (*Rodgers* v. *Peckham,* 120 Cal. 238 [52 Pac. 483], quoting from *Harris* v. *San Diego Flume Co.,* 87 Cal. 526 [25 Pac. 758].) It follows, therefore, that appellants, who had no dealings with Kruger when the latter represented respondent in the purchase of this note and mortgage from Mrs. Archer, and who knew nothing of the other transactions in which respondent was represented by Kruger, are not in a position to claim that the latter possessed any ostensible authority, or any authority whatever beyond that which respondent actually and intentionally conferred upon him.

If appellants find themselves the victims of Kruger's fraud they have no one but themselves to blame. One cannot read this record without perceiving that Kruger deliberately deceived respondent, intending all the while to keep her in ignorance respecting his possession of the ring in order that he might wrongfully convert it to his own use. But this was made possible by appellants' wilful violation of that provision of their mortgage contract whereby they obligated themselves not to remove any of the mortgaged property from No. 3536 Grim Street without the consent of their mortgagee. There is no evidence that the mortgagee ever authorized or consented to the removal of the ring prior to its delivery to Kruger.

[3] There is no evidence to justify the claim that Kruger was respondent's general agent with authority to represent her in all matters pertaining to her investments. Appellants seem to think that because Kruger acted as respondent's agent in a number of transactions in which she purchased securities through him, he was her general agent to purchase securities for her. As we have pointed out, he was in each instance clothed with special authority only. In *Barrett* v. *Irvine,* 2 I. R. (K. B.) (1907) 462, it was held that no multiplication of acts as special agent could convert a special agent into a general agent. See, also, in this con-

nection, *Nourse* v. *Jennings*, 180 Mass. 592 [62 N. E. 974] , *Rice* v. *James*, 193 Mass. 458 [79 N. E. 807] , *Gregg* v. *Wolliscroft*, 52 Ill. App. 214, and *Campbell* v. *Sherman*, 49 Mich. 534 [14 N. W. 484]. In *Gregg* v. *Wolliscroft, supra,* the Illinois appellate court, holding that one Evans was the special and not the general agent of the appellee, said: "It is in proof that Evans bought many cars of oats and of other grain for the appellee. This is relied upon as establishing the claim that he was a general agent. It is not, however, shown that he made such purchases otherwise than in pursuance of special directions given him from time to time to do so, as was his general custom or system of transacting the business in which he was engaged."

Equally without merit is the claim that respondent is estopped to deny that she authorized Kruger to hold the ring for her as her agent. In *Post* v. *City etc. Bank*, 181 Cal. 244 [183 Pac. 805] , our supreme court quotes from Corpus Juris to the effect that "an estoppel does not arise from the mere fact that the agent has acted for the principal on one or more previous occasions, but not under appearance of a general authority so to act."

[4] It next is urged that the evidence is insufficient to support the finding that appellants did not tender to respondent the amount due on the promissory note. The argument advanced to sustain this contention is based upon the assumption that Kruger held the ring as respondent's agent at all times after the assignment to her of the note and mortgage. The only tender ever made by appellants was an offer to pay the amount due on the promissory note, provided respondent delivered the ring to appellants. As we have seen, respondent did not have possession of the ring, either actually or constructively as Kruger's principal, and the offer, therefore, was ineffective as a tender, since it was accompanied by a condition which appellants had no right to impose.

[5] The court found the value of the ring to be $150, and not $700 as claimed by appellants. It is contended that the evidence is insufficient to support this finding as to value; but since respondent was not accountable for the ring, the finding as to its value is entirely inconsequential.

[6] On the cross-examination of respondent, appellants' counsel asked her if it was not a fact that Kruger, at the

time he absconded, had in his possession securities, papers and documents which she had entrusted to him. In propounding this question it doubtless was the purpose of appellants' counsel to show that Kruger was respondent's general agent in all matters pertaining to her investments. The court sustained an objection to the question upon the ground that it was irrelevant and immaterial. In this there was no error and no prejudice to appellants' rights. Elsewhere in her cross-examination respondent testified that Kruger did not have charge of her papers or of her safe-deposit box.

[7] On the direct examination of Mrs. Archer, who had been made a defendant in the action, her counsel sought to show that Kruger told her, at the time when she transferred the note and mortgage to respondent, that he had the ring in his possession. At this stage of the witness' examination the court, of its own motion, said: "Anything he [Kruger] said may be stricken here. We don't want hearsay testimony in here." It is claimed by appellants that the statements of Kruger were admissible under the principle that admissions made by an agent in the course of his employment are binding upon his principal. But it was not necessary to show by Kruger's statements to Mrs. Archer that the ring was in his possession. It was proved by other and uncontradicted evidence that the ring had been delivered to Kruger and that he had it in his possession.

Finally, it is claimed that the court failed to find upon all of the issues raised by appellants' cross-complaint and respondent's answer thereto. Appellants have not seen fit to favor us with a particularization of the issues upon which it is claimed the court failed to find. If there is any issue upon which the court made no finding it is not of a character which would warrant a different judgment, even if the court had found thereon in appellants' favor.

The judgment is affirmed.

Works, J., and Craig, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 27, 1925.