Hayes, J.
This is an action of contract. The plaintiff seeks to recover $130.00 claimed by him to be due on a check, which check had been signed in blank by the defendant and came into the possession of the plaintiff under the circumstances and in the manner below stated:
The plaintiff is in the wholesale jewelry business with place of business at 333 Washington Street, Boston, Mass. About March 1, 1942, one William Pennfield selected a diamond bracelet and one single diamond for which he gave a check for $130.00 in payment thereof. This check bore the signature of Margaret Murphy, the defendant; William Pennfield obtained possession of the check by taking the same from a table in the bedchamber of the defendant without her knowledge or consent and without her authority, filled it out and used it for his own use. Said Pennfield was a visitor in the house of the defendant, and while there, *240 unlawfully entéred the defendant’s bedchamber and took the check; some checks had been signed in blank by the defendant, but had never been delivered to any person; , they were left on a table in said bedchamber to enable an employee of the defendant, the housekeeper, to fill in the amounts due and payable for laundry, for milk, and for groceries, left at the defendant’s home, and thereby pay such indebtedness due for the same.
The check, given to the plaintiff in payment of the diamonds, was dated and made payable by said Pennfield to said Pennfield in the sum of $130.00, endorsed by said Penn-field in the presence of the plaintiff, and then delivered to the plaintiff; it was endorsed and deposited by the plaintiff, presented to the Bank on which drawn for payment; payment was refused and the check was returned to the plaintiff because of insufficient funds. The plaintiff then contacted said Pennfield, insisted that he make the unpaid cheek good, and after some days Pennfield gave the plaintiff another check for $130.00, which check also bore the signature of the defendant, Margaret Murphy, and was completed in manner as above stated, and was given to the plaintiff in exchange for the first check. This check, as above stated, was completed by Pennfield in the presence of the plaintiff, delivered to the plaintiff and endorsed and deposited by the plaintiff and presented at the Bank upon which drawn, which check also was returned to the plaintiff because of insufficient funds. The plaintiff then sued the defendant for $130.00, the amount stated on the second above mentioned check.
The Negotiable Instrument Law, so called, governs the liability of the parties in such transaction.
It is claimed by the plaintiff that he is an innocent holder, for value, of the check signed by the defendant; that the check was in the possession of a third party and was ob *241 tained by him, the plaintiff, as an innocent holder for value. The defendant claims that General Laws (Ter. Ed.) Chapt. 107, Sect. 37, governs this case and in, and under, the circumstances as above stated, is a defense to the plaintiff’s proceedings.
Said Section reads as follows:
“Where an incomplete instrument has not been delivered it will not, if completed and negotiated without authority, be a valid contract in the hands of any holder, as against any person, whose signature was placed thereon before delivery.”
At the close of the trial and before final arguments the defendant made the following Bequests for Bulings:
“1. The plaintiff is not a holder in due course. 2. The check sued upon in this action was never delivered within the meaning of General Laws, Chapter 107. 3. The check sued upon in this action was an incomplete instrument. 4. The check sued upon was an incomplete instrument and was never delivered. 5. The check sued upon was an incomplete instrument and was completed and negotiated 'without authority from the defendant. 6. The check sued upon is not a valid contract. 7. The check sued upon is not a valid contract in the hands of a holder in due course. ’ ’
The Court denied all the defendant’s Bequests for Bulings and made the following “Memorandum of Findings and Decisions:”
“The plaintiff brings suit against the defendant as maker of a promissory note. This note was, when received by the plaintiff payable to the order of one William Penfield, for the sum of $130. The note was endorsed by said Penfield to the plaintiff for merchandise sold by the plaintiff to Penfield.
Both counsel submitted to the Court an offer of proof of what their witnesses would testify, and case was heard on said submission.
*242 Taking the facts most favorable to the defendant, it appears that the defendant maker signed her name to a check, but left the name of the payee in blank. This was a matter of convenience to her, so that her housekeeper could fill in the check in her absence and pay certain bills. The said Penfield without the knowledge of the defendant, on a visit to her home, obtained said cheek and inserted his name as payee and endorsed it to the plaintiff who had no knowledge of the transaction by means of which Penfield acquired said check. The plaintiff gave Penfield certain merchandise of the value of the check and now sues on said check.
It is an elementary principal that where one of two innocent persons must suffer, the one who must bear the loss, is the party who allowed the situation to occur. The action of the defendant in leaving a blank check signed by her was the proximate consequences of the damage received by the plaintiff. The defendant set that force in action by her negligent act.
I find under all the circumstances that the plaintiff was a holder in due course.”
The Negotiable Instrument Law, so-called, General Laws (Ter. Ed.) Chapt. 107, Sect. 37, cited above governs this case except in so far as the plaintiff may be an innocent holder brought about through the negligence of the defendant.
There are two questions involved:
(a) Is there an implied authority given by the drawer of the check in dispute to the person who negotiates the check to fill in the blank spaces; and (b) Is the check in dispute in circulation due to the negligence of the defendant.
Following the reasoning in the case of Lennick vs. Nutting, 125 New York Supp. 93, the first question above mentioned cannot apply for no such relationship exists; no situation can be supported by the evidence, and the facts found therefrom, in the instant case warranting any authority being given by the defendant to Pennfield to negotiate the check; in this case the check on which suit was begun was *243 stolen so that negatives any such conclusion. On the second question actionable negligence would be: First: The existence of a duty on the part of the defendant controlling the situation; Second: Omission to take ordinary and reasonable care in connection therewith; and Third: Injury resulting in consequence of such negligence.
In the case of Lennick vs. Nutting, above, the Court said that a Bank, because of a contract with the depositor, may be bound to honor the check, but there is no such obligation on the part of a third party so to do; he can take it or not as he pleases. A party signing a check is not bound to anticipate nor guard against it being stolen; and if a check is drawn in blank and there has been no delivery of the same, theft cannot estop the drawer claiming that there was a nondelivery; that if a blank check was signed, the spaces not being filled in, and was left upon the desk of the drawer of the check in his room, it is not made negotiable on the part of the drawer by some person who had no right to enter the room, but who, however, did unlawfully enter the same and stole the uncompleted check; such a person is one to whom no express or implied authority has or had been given to negotiate the check. If such a person entered the room and stole the check and then filled in the spaces left blank, that check is governed by the above Statute, and while in the hands of any third party payment of the same, is subject to being refused.
See also Holzman Cohen & Co. vs. Teague, 158 New York, Supp. 211.
In Massachusetts National Bank vs. Snow, 187 Mass. 159, at Page 163, the Court says:
“The following specific language of the statute touching this question (negotiating negotiable instruments) as well as its provisions in other sections, was intended to establish the law in favor of holders in due course.
*244 ‘Where the instrument is in the hands of a holder in due course a valid delivery thereof by all parties prior to him so as to make them liable to him is conclusively presumed. ’ This conclusive presumption exists as well when the note is taken from a thief as in any other case. Of course this rule does not apply to an instrument which is incomplete. But in reference to a complete, negotiable promissory note payable to bearer, it is a wholesome and salutary provision.”
In the instant ease the plaintiff had knowledge that the checks he received, and especially the check sued upon, were incomplete instruments. The check sued upon was a blank cheek signed by the defendant, with no date, amount, or payee, filled in at the time of the transaction between the plaintiff and said Pennfield; those items were filled in by Pennfield in the presence of the plaintiff, and the check was then delivered by said Pennfield to the plaintiff. The plaintiff, therefore, had knowledge that it was an incomplete instrument. The Negotiable Instrument Law applied to him; that he had knowledge it was an incomplete instrument; and the question of whether it had been delivered by the defendant to Pennfield so that he had a right to complete it, or that it had been unlawfully obtained by said Penn-field so that he had no title thereto, was a matter binding upon the plaintiff. The defendant had a right to rely upon the Statutes in these proceedings, unless, as above stated, there was evidence of such negligence as would bar her, the defendant, from relying upon said Statutes. There was no evidence of negligence unless the leaving signed checks on the table in her chamber was negligence.
The cases relied upon, and cited, by the plaintiff do not sustain the contention that a check signed in blank, and then stolen and filled .in by the person stealing the checks, makes the person signing* the check liable. In the cases cited the drawer of checks: had placed them in the *245 possession of the person who filled in the checks and negotiated the same, or had placed them in his custody in such manner that it could no't be said that the checks bad been stolen by the person who signed and negotiated them.
The trial judge definitely based his decision upon the negligence of the defendant in having left signed check where anyone could get it. In deciding 'the case on this ground he apparently did not consider a pertinent principle of law. If one negotiates an incomplete check which has not been delivered; it will not, if completed and negotiated without authority, be a valid contract as against a maker who signed before delivery, Gr. L. (Ter. Ed.) C. 107, Section 37. Therefore, one who purchases an incomplete instrument with knowledge that it is- incomplete cannot hold the maker if the instrument has been filled out contrary to the authority given by the maker. Such a purchaser may be a holder for value but not a holder in due course. Tower v. Stanley, 220 Mass. 429, at 436. The finding made by the trial judge that the plaintiff was a holder in due course, was not a finding of fact but a finding of fact involving a question of law upon the evidence. Schon v. Odd Fellows Building Association. Such a ruling of law may be reviewed, Ahern v. Towle, 310 Mass. 695, at 701.
The material facts are that Pennfield secured the check, blank except for the defendant’s, signature and filled it in with his own name, all without the defendant’s knowledge. If that were all that there were to the case the plaintiff could have been found to be a holder in due course, for one who takes for value without knowledge of an infirmity which has existed in the instrument is a holder in due course and can recover from the maker. Massachusetts National Bank v. Snow, 187 Mass. 159, at 163. Fillebrown v. Hayward, 190 Mass. 472. Liberty Trust Co. v. Tilton, 217 Mass. 462, at 463, 464. National Investment Co. v. Corey, *246 222 Mass. 453, 454, 455. Cohn v. Taunton, 303 Mass. 182, at 183. Tower v. Stanley, supra, at 436. There was, however, evidence of much more. The check when first the plaintiff saw it was as it was when taken from the residence- of the defendant, blank except for signature. It was filled out as to payee" and amount in the presence of the plaintiff. The plaintiff wa-s therefore put upon inquiry as to the authority of Pennfield to complete the check. Tower v. Stanley, supra. Munroe v. Stanley, 220 Mass. 438, at 444. Stone v. Sargent, 220 Mass. 445, at 449.
In Boston Steel & Iron Co. v. Steuer, 183 Mass. 140, at 145-147, very much the same facts existed as in the present case; <the defendant gave her husband a check payable to the plaintiff with the amount not filled in -and that it was filled in .at-the defendant’s office for a larger amount than the defendant had authorized. It was held that the husband’s authority to fill it in was only prima facie and the defendant could show what the husband’s authority actually was. Tower v. Stanley, supra, at 437. See Karlsberg v. Frank, 282 Mass. 94, in which the two oases just. cited are differentiated from other cases.
In the case before us, Pennfield had no authority to fill in the check. The filling in was done in .the plaintiff’s presence, not only for the check sued on but for an earlier check, also improperly taken from the defendant’s house, and protested for non-payment, the -check sued on being given by. Pennfield to replace the one protested. This knowledge of the existence of an infirmity placed -the plaintiff upon inquiry as to Pennfield’s authority.
The negligence rule which the trial judge had in mind is essentially different from the foregoing. It is best represented by a sentence in the opinion of Scollans v. Rollins, 179 Mass. 349, at 353, where C. J. Holmes used these significant words..
*247 “But if the owner of the instrument intrusts it to ■another, he does so charged with notice of the power to deceive which he is putting into that other’s hands, and if deception follows he must bear the burden.”
In Russell v. American Bell Telephone Co., 180 Mass. 467, at 470, the principle is extended to include a case where .there was a conversion by an agent of property amounting to larceny and the owner was held barred from recovery by estoppel because her negligence made the conversion possible. In Gardner v. Beacon Trust Co., 190 Mass. 27, at page 28, the court' states the rule of law as follows citing an English case.
‘ ‘ The general rule of the law is, that where a person has obtained the property of another from one who is dealing with it without the authority of the true owner, no title is acquired as against that owner, even though full value be given and the property be taken in the belief that an unquestionable title thereto is being obtained, unless the person taking it can show that the true owner has so acted as to mislead him into the belief that- the person dealing with the property has authority so to do. If 'this can be shown, a good title is acquired by personal estoppel against .the true owner.”
In Edgerly v. First National Bank of Boston, 292 Mass. 181, at 193, the court says,
6 ‘ The only way in which the owner can lose title at common law to an innocent purchaser from a wrong doer having no title is by estoppel. An owner entrusting to another a certificate of stock bearing the owner’s indorsement in blank, knows that he is making actual deceit possible.” See, also Ironside v. Levi, 278 Mass. 18, at 22.
In all of the cases cited, there was estoppel because the true owner had taken action of which the natural effect was to make deceit possible on the part of the person ‘‘ en *248 trusted” wiln the instrument. In the case at bar, nothing was entrusted to Pennfield and the taking of a signed check from the maker’s bed-chamber was not a natural result of leaving a signed check there. We believe no elements of estoppel are present in the facts of this case.
In our opinion it was prejudicial error for the trial judge to decide the case on the grounds of negligence. It does not appear that he gave any consideration to the provisions of G. L. (Ter. Ed.) e. 107, section 37 or to Boston Steel & Iron Co. v. Steuer, supra, which represent the pertinent law.
We believe that it was prejudicial error for the trial judge to rule that the evidence before him permitted a finding that the ■ plaintiff was a holder of the check in due course.
We believe, also, that 'the plaintiff, with notice of the incomplete condition of the check before Pennfield filled it in was not an innocent person who had the benefit of any estoppel.
As the trial judge did not apply the proper principle of law to the facts the finding for the plaintiff is to be vacated and the case is to stand for a new trial.